## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| XL INSURANCE AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:17-cv-00384-JFM |
| v. | ) | |
| | ) | |
| KALKREUTH ROOFING AND SHEET METAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| KALKREUTH ROOFING AND SHEET METAL, INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARCHITECTURE, INC., et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**ARCHITECTURE INC.'S BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

Defendant, Architecture Inc., ("Architecture") by counsel and pursuant to Fed. R. Civ. P.

12(b)(6) and Local Rule 105, states as follows in support of its motion to dismiss Kalkreuth

Roofing and Sheet Metal, Inc.'s ("Kalkreuth") Third-Party Complaint with prejudice:

### I.        Introduction

The Plaintiff in this action, XL Insurance America, Inc. ("XL"), is the insurer and

subrogee of Southern Research Institute ("Southern Research").  Southern Research owns a

1

building in Frederick, Maryland ("Building") that suffered a roof collapse on or about September

29, 2015.  Second Am. Compl. ¶ 5 (ECF No. 19) (hereinafter "Compl.").

XL alleged that Kalkreuth caused the roof collapse by improperly installing a new roof

on the building.  According to XL's Complaint, the building had four roof drains, one of which

Kalkreuth covered and the remaining three of which were obstructed by Kalkreuth's construction

errors.  These obstructed drains caused the roof to pond with water during a significant rain

storm, resulting in a collapse of the roof.  *See* Compl. ¶ 5.

Kalkreuth filed its Third-Party Complaint against various design professionals who

allegedly performed various undescribed renovation design services related to the building over

the course of 14 years.  Third-Party Compl. ¶ 15 (ECF No. 32).  Kalkreuth bases its demand for

indemnity and contribution on a vague theory that the roof collapse was caused, generally, by a

breach of the third-party defendants' applicable standard of care at some point during that 14-

year period.

The Third-Party Complaint failed to state a claim upon which relief can be granted.

Kalkreuth's claim for indemnity fails as a matter of law because XL's complaint alleged the

active negligence of Kalkreuth.  Kalkreuth failed to sufficiently state a claim for contribution

because it relies on entirely conclusory statements about a breach of the applicable standard of

care, which were unsupported by any certificate of a qualified expert, as required by Md. Code

Ann., Cts. & Jud. Proc. § 3-2C-02.

The Third-Party Complaint should be dismissed with prejudice.

## II.      Standard of Review

Before filing its answer, a third-party defendant may move the Court to dismiss the third-party complaint on the grounds that it failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see* Fed. R. Civ. P. 14(a)(2).  To survive such a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Hall v. Greystar Management Services, L.P.*, 637 Fed. Appx. 93, 97 (4th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)).  Although the Court "must accept all of the allegations contained in a complaint as true, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action— supported by mere conclusory statements—do not suffice."  *Id.*  "A complaint, therefore, must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).

## III.      Applicable Law

A.      *A Third-Party Plaintiff Has No Right of Indemnity or Contribution for Its Own Breach of Contract.*

A defendant charged with a breach of contract may not seek indemnification or contribution from a third-party defendant for those claims unless there is a parallel breach of contract between the defendant/third-party plaintiff and the third-party defendant.  *Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp. 592, 599-600 (D. Md. 1985) ("The Court is unaware of any common law right of indemnity or statutory right of contribution under Maryland law that may be exercised by a defendant found liable for breach of contract in absence of a material breach of contract by a third party which causes or otherwise occasions the defendant's breach of its contract with the plaintiff.").

Third-party claims for indemnity and contribution must therefore relate exclusively to an alleged tort liability, not to an alleged breach of contract by the third-party plaintiff.

B.      *Indemnity*

In Maryland, a party's right to indemnity from another party can arise in only three possible circumstances: (1) through an express contractual agreement; (2) implied in fact through a special relationship between the parties, which is typically contractual; or (3) implied by law where one party, who is without personal fault, is subject to a tort liability for the wrongful conduct of the other party. *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 381-83, 942 A.2d 722, 730-31 (2008).

If there is no contractual relationship between the parties at all, then any right to indemnity can only be implied by law as a tort-based indemnity. *Id.* For such a tort-indemnity claim to succeed, the conduct of the party demanding indemnification must have been passive or secondary. *See Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp. 592, 595-96 (D. Md. 1985). This tort-based indemnity "is rooted in the concept of imputed or constructive fault." *Id.*

To evaluate a claim of tort indemnity asserted in a third-party complaint, the Court looks to the primary complaint against the defendant/third-party plaintiff. *Id.* "If the plaintiff's complaint alleges conduct by the third-party plaintiff that would constitute active negligence, or if it is clear from the circumstances revealed by the plaintiff's complaint that the defendant's (third-party plaintiff) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate." *Id.* "'Sweeping conclusions cast in the form of factual allegations' [in a third-party complaint] need not be

accepted for the purpose of establishing the sufficiency of the defendant's third-party claims for

indemnification." *Id.*, 606 F. Supp. at 597 (citations omitted).

C.      *Contribution*

"In Maryland, a right of contribution exists among tort-feasors under the Uniform

Contribution Among Tort-Feasors Act." *Pyramid Condominium Ass'n v. Morgan¸* 606 F. Supp.

592, 598 (D. Md. 1985); *see also* Md. Code Ann., Cts. & Jud. Proc. §§ 3-1401 to -1409.  The

right of contribution is a derivative right arising "from the duty each of the wrongdoers owes to

the injured party, as opposed to the obligation running among themselves." *Id.* (citation

omitted).  If the plaintiff does not itself have a right of action against the third-party defendant,

then there can be no contribution.

D.      *Md. Code Ann., Cts. & Jud. Proc. § 3-2C-02*

In Maryland, a professional malpractice claim must, within 90 days of filing, be

supported by a certificate of a qualified expert that is filed with the Court.  Md. Code Ann., Cts.

& Jud. Proc. § 3-2C-02.  This certificate must "[c]ontain a statement from a qualified expert

attesting that the licensed professional failed to meet an applicable standard of professional

care." *Id.*  Failure to file such a certificate requires dismissal of the claim without prejudice

unless (1) the claimant makes a written request for necessary documentation within 30 days of

serving its claim or (2) the claimant makes a written request to the Court supporting good cause

to waive or modify the statutory requirement. *Id.*

Applicable "Claims" are defined by statute to include civil actions such as this third-party

claim filed in the United States District Court.  Md. Code Ann., Cts. & Jud. Proc. § 3-2C-01(b).

Applicable defendants include not only individual licensed professionals, but also "the employer, partnership, or other entity through which the licensed professional performed professional services." *Id.*

A claim of negligence triggers this statute if it "is based on the licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate." *Id.* Although the statute "does not apply to every action that might be brought against a licensed professional or the licensed professional's employer," it does apply "when the complaint raises the issue of whether that licensed professional deviated from the standard of care for the profession." *Heavenly Days Crematorium, LLC v. Harris, Smariga and Associates, Inc.*, 433 Md. 558, 576-77, 72 A.3d 199, 209 (2013).

## IV.    Argument

A.      *Kalkreuth Failed to State a Sufficient Claim for Indemnity in Count I*

Kalkreuth's Third-Party Complaint does not allege any relationship, contractual or otherwise, between itself and Architecture. Instead, "Kalkreuth avers that in or about 2011, Southern Research engaged Architecture … on an ongoing basis to provide professional design and construction administration services in conjunction with renovation work …" Third-Party Compl. ¶ 13 (ECF No. 32).

Because Kalkreuth does not allege any relationship with Architecture whatsoever, Kalkreuth's indemnity claim must be founded on implied tort indemnity. This variety of indemnity requires the Court to consider whether Kalkreuth's potential liability to XL turns on allegations of active negligence by Kalkreuth. *See Pyramid Condominium Ass'n v. Morgan*, 606

F. Supp. 592, 595-96 (D. Md. 1985).  If so, then Kalkreuth cannot ever prevail on Count I of the
Third-Party Complaint against Architecture.  *See id.*

XL's Complaint relied entirely on allegations of active negligence by Kalkreuth.  XL
alleged that "Kalkreuth inappropriately placed roof membrane overtop of and completely
concealed" one roof drain.  Compl. ¶ 9 (ECF No. 19).  XL alleged that Kalkreuth also
"inappropriately reduced the capacity of the remaining three drains … by placing rubber roof
material within and around the opening of the drains, which reduced the circumference of the
drains."  Compl. ¶ 10.  XL alleged that "Kalkreuth failed to provide rooftop drain assemblies
with strainers to the open roof drains so that debris falling into the drains could be captured and
avoid clogging."  Compl. ¶ 11.  XL further alleged that "Kalkreuth failed to properly resecure
items … to the roof which, during the course of rain falls and drainage into the existing drains,
caused partial blockage of the drains."  Compl. ¶ 12.  As the cumulative result of Kalkreuth's
active negligence, these drains failed to discharge rainwater, which caused ponding that in turn
overloaded the building's structure and caused the roof to collapse.  Compl. ¶ 14.

Kalkreuth also demands indemnity "for the full amount of damages recovered by the
Plaintiff …."  Third-Party Compl. ¶ 27.  Yet XL's Complaint against Kalkreuth asserts claims of
both breach of contract and tort negligence.  Compl. ¶¶ 28-29, 36.  To the extent Kalkreuth is
found liable to XL for breach of contract, Kalkreuth has no viable claim for indemnification
against Architecture.  *See Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp. 592, 599-600
(D. Md. 1985).

Because XL's Complaint relies on allegations of active negligence by Kalkreuth and
breach of contract by Kalkreuth, Kalkreuth has failed to state a claim for indemnity against

Architecture upon which relief can be granted.  Count I of the Third-Party Complaint should be dismissed with prejudice.

B.      *Kalkreuth Failed to State a Sufficient Claim for Contribution in Count II*

The allegations of XL's Complaint advance a theory that the building's roof collapse was caused by Kalkreuth's negligent construction errors during the process of replacing the roof of the Building.  *See* Compl. ¶ 6-14.  XL made no allegations whatsoever implicating any professional services provided by Architecture.

Kalkreuth's Third-Party Complaint relied on an entirely different theory by alleging that the roof collapse may have been caused by Architecture's negligent failure to meet the applicable professional standard of care when providing unrelated professional services to Southern Research.  *See* Third-Party Compl. ¶ 18-23, 25-26, 29.  Specifically, Kalkreuth alleged that Architecture "should have known in exercise of the standard of care that the additive weight in combination with a) increased point loading of existing structural members resulting from the Third-party Defendant's designs and b) the allegedly deficient roofing system, that the Building's structure might fail if a significant rain or snow event occurred."  Third-Party Compl. ¶ 20.  "Kalkreuth avers, *inter alia*, that had the structure of the Building been properly analyzed and considered in conjunction with [Architecture's] design services, [Architecture] should have known, in exercise of the standard of care, that neither the Building's roof nor the Building's structure were compliant with state, local, commercial, and industrial standards, codes, or regulations as alleged by the Plaintiff."  Third-Party Compl. ¶ 21.

Kalkreuth repeatedly alleged that Architecture did not meet the applicable professional standard of care.  *See* Third-Party Compl. ¶ 20, 21, 25.  Although the Court must accept

Kalkreuth's factual allegations as true for the purpose of this motion to dismiss, the Court has no parallel obligation to accept Kalkreuth's "threadbare recitals of the elements of a cause of action—supported by mere conclusory statements." *Hall v. Greystar Management Services, L.P.*, 637 Fed. Appx. 93, 97 (4th Cir. 2016).  Kalkreuth alleged that Architecture "may have been first engaged by Southern Research to prepare design plans for multiple structural and mechanical renovations to the Building, *which renovations began in or about 1997*.  Third-Party Compl. ¶ 15 (emphasis added).  Kalkreuth then alleged that Architecture continued providing some form of services to Southern Research through 2011, but Kalkreuth makes no attempt to identify what professional services provided during that 14-year period purportedly contributed to the roof collapse.  Kalkreuth instead equated an ongoing "failure to ensure" and failure to "properly analyze" the sufficiency of the building's existing structure with the affirmative creation of "latent defects" within that existing structure.  *Compare* Third-Party Compl. ¶¶ 18, 19, 21 *with* ¶ 22.

Kalkreuth's broad reliance on unspecified professional services reaching back to 1997 does not state a claim to relief that is plausible on its face.  As one example, any renovations performed between 1997 and 2005 were completed more than 10 years before the roof collapsed in 2015.  Maryland's statute of repose specifically prohibits claims for "contribution or indemnity from any architect … for damages incurred when … injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use." Md. Code Ann., Cts. & Jud. Proc. § 5-108.  The Third-Party Complaint did not allege whether any *structural* renovations occurred after 2005, relying instead on vague

allegations about subsequent duties to "ensur[e] the structural soundness of the Building."
Third-Party Complaint ¶ 18.

Count II of the Third-Party Complaint should be dismissed with prejudice for failure to state a claim.

C.      *Kalkreuth Must File a Certificate of Qualified Expert*

Kalkreuth's allegations are insufficient to support its claims for indemnity and contribution under the Rule 12(b)(6) standard.  Furthermore, Md. Code Ann., Cts. & Jud. Proc. § 3-2C-02 requires Kalkreuth to file a certificate of a qualified expert in support of Kalkreuth's position that Architecture failed to meet the applicable standard of care in the renovation design services it provided to Southern Research.  Kalkreuth has requested discovery from Architecture pursuant to Rule Md. Code Ann., Cts. & Jud. Proc. § 3-2C-02(b)(1), and Architecture will produce the requested documents.

In the event that Kalkreuth is unable to support its claims with a certificate of a qualified expert within 90 days from the date Architecture produces the documents requested by Kalkreuth, the Third-Party Complaint should be dismissed without prejudice pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-2C-02.

## V.      <u>Conclusion</u>

For the foregoing reasons, Architecture respectfully requests that this Court dismiss the Third-Party Complaint with prejudice.

Respectfully submitted,

ARCHITECTURE, INC.


By:_____/s/ James R. Jeffcoat_____
        Counsel


James R. Jeffcoat (MD Bar No. 30105)
GORMAN & WILLIAMS
36 South Charles Street, Suite 900
Baltimore, MD 21201
Phone: 410.464.7026
Fax:    410.528.0602
Email: jjeffcoat@gandwlaw.com

James W. Walker (*pro hac vice* application pending)
Stephan F. Andrews (*pro hac vice* application pending)
VANDEVENTER BLACK LLP
901 E. Byrd Street, Suite 1600
Richmond, VA 23219
Phone: (804) 237-8800
Fax: (804) 237-8801
jwalker@vanblacklaw.com
sandrews@vanblacklaw.com
*Counsel for Architecture, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th  day of August, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Howard S. Stevens
Meighan Griffin Burton
PASCALE STEVENS LLC
2700 Lighthouse Point E. Suite 320
Baltimore, Maryland 21224
(443) 863-5758 – Telephone
(443) 863-5751 – Facsimile
hstevens@pascalestevens.com
mburton@pascalestevens.com
*Counsel for Kalkreuth Roofing and Sheet Metal, Inc.*

Joseph W. Cooch
Jonathan C. Shoemaker
Lee & McShane, PC
1211 Connecticut Ave., NW
Suite 425
Washington, DC 20036
(202) 530 8111 – Telephone
(202) 530-0402 – Facsimile
jwc@lee-mcshane.com
jcs@lee-mcshane.com
*Counsel for Allen & Shariff Corporation*

Matthew John Pavilides
Miles and Stockbridge
11 N. Washington St., Suite 700
Rockville, Maryland 20850
(301) 762-1600 – Telephone
(301) 841-7974 – Facsimile
mpavlides@milesstockbridge.com
*Counsel for Rathgerber/Goss Associates, Professional Corporation*

Michael Howard Burgoyne
Thomas Thomas and Hafer LLP
1829 Reisterstown Road, Suite 200
Baltimore, Maryland 21208
(410) 653-0460
(410) 484-2967 – Facsimile
mburgoyne@tthlaw.com
*Counsel for XL Insurance America, Inc.*

Mark C. Cavanaugh
Samuel J. Pace, Jr.
Dugan Brinkman Maginnis and Pace
1880 John F. Kennedy Blvd, Suite 1400
Philadelphia, PA 19103
(215) 563-3500 – Telephone
(215) 563-7654 – Facsimile
mccavanaugh@dbmplaw.com
sjpace@dbmplaw.com
*Counsel for XL Insurance America, Inc.*

_____/s/ James R. Jeffcoat_____

4850-8630-7404, v. 2