IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| XL INSURANCE AMERICA, INC.<br>As subrogee of<br>SOUTHERN RESEARCH<br>INSTITUTE, INC.<br><br>    Plaintiff,<br><br>v.<br><br>KALKREUTH ROOFING AND<br>SHEET METAL, INC.<br><br>    Defendant | Case No.: 1:17-cv-00384-JFM |

**THIRD-PARTY PLAINTIFF'S OPPOSITION TO ARCHITECTURE INC.'S
MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

The Defendant/Third-Party Plaintiff, Kalkreuth Roofing and Sheet Metal, Inc., hereby responds to Architecture, Inc.'s Rule 12(b)(6) Motion to Dismiss the Third-Party Complaint, and in opposition to its Motion, states as follows:

I.       **INTRODUCTION**

Plaintiff, XL Insurance America, Inc. ("Plaintiff"), as subrogee to Southern Research Institute, Inc. ("Southern Research"), has asserted claims of negligence and breach of contract (see Second Amended Complaint, ECF 19) against the Defendant Kalkreuth Roofing and Sheet Metal, Inc. ("Kalkreuth") seeking recovery of costs XL incurred due to covering the loss from a partial building collapse that occurred on September 29, 2015 (the "Occurrence") at a research facility owned and operated by Southern Research in Frederick, Maryland (the "Building"), following heavy rains.

Plaintiff avers that Kalkreuth was negligent by, *inter alia*, failing to install a roof with an adequate drainage system, inappropriately covering one of four of the drains present on the roof, or otherwise failing to properly install a roofing membrane at the Building in or about 2011. 2d Am. Compl. ¶¶ 17-19, 27-28. Plaintiff further avers that, due to Kalkreuth's alleged negligence, Plaintiff claims that significant ponding of rainwater occurred, the drainage system failed, and the structure of the Building collapsed. 2d Am. Compl. ¶¶ 14, 29.

On June 14, 2017, Kalkreuth answered the Second Amended Complaint, denying Plaintiff's claims, and on June 28, 2017, filed its Third-Party Complaint, alleging, *inter alia*, that the negligence of the Third-Party Defendant Architecture, Inc. ("Architecture")[1] and other third-party design professionals in connection with the professional design and construction administration services they provided for the Building over an extended period, including in or about 2006 through 2011, may have been the primary or contributory cause of the Building's structural failure. Notably, this work predated, or at least in 2010, may have been contemporaneous to Kalkreuth's roof installation work in early 2011. See Third-Party Complaint ¶¶ 13-14.

Specifically, and as noted in Kalkreuth's Third-Party Complaint, Plaintiff alleges that the collapse was due to certain design deficiencies, such as the alleged failure to incorporate a secondary overflow drainage system for which Kalkreuth had no contractual obligation to address. Am. Compl. ¶ 13; Third-Party Compl. ¶ 11. Similarly, Plaintiff alleges the Building's structure became overwhelmed due to it being overloaded by the weight of the rainfall; however, again, Kalkreuth owed no duties to Southern Research as a design professional to consider the

---

[1] Throughout this Memorandum any reference to "Architecture" should be deemed to include the other Third-party Defendants, however, since it is only Architecture that has moved for dismissal, in many cases the discussion will only reference "Architecture" as the moving party.

2

Building's structural integrity in conjunction with its contract to install a new waterproof roofing membrane.

In turn, Kalkreuth basically seeks to add the Third-Party Defendants as necessary parties, and avers in its Third-Party Complaint that it has asserted claims against the Third-Party Defendants because Plaintiff's Complaint directly implicates the sufficiency of the Building's structural design, which Kalkreuth alleges was unable to sustain the rainwater that collected upon it on September 29, 2015, causing or contributing to the loss. In addition, Kalkreuth specifically alleges that as the architectural firm responsible for the structural design of the Building's renovations over many successive projects, including those that took place in or around 2006 and 2011, Architecture was responsible for ensuring the structural soundness of the Building during each of their engagements, and failed to meet the applicable standard(s) of care in connection with those engagements. Third-Party Compl. ¶¶16-18.

**II.     COUNT I STATES A VALID CLAIM FOR INDEMNITY**

Architecture maintains that Kalkreuth cannot bring a third-party claim sounding in tort based upon Plaintiff's breach of contract claim. As a threshold matter, under Maryland law, "the fact that the original plaintiff's claim is in contract does not preclude the original defendant from filing a third-party complaint in tort." *White v. Land Homes Corp.*, 251 Md. 603, 607 (1968), citing *Allen & Whalen, Inc. v. Grimberg Co.*, 229 Md. 585, 587 (1962). To state a claim for tort-based indemnity, Kalkreuth need only allege that Architecture has original tort liability to the plaintiff in the underlying suit. See, e.g., *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md. App. 698, 706, 796 A.2d 806, 810-11 (Md. App. 2002) ("In order to successfully claim that appellees are liable to them for contribution and/or indemnity, appellants must have alleged that appellees have original tory liability to plaintiffs in the Underlying Suit").

As summarized in Section I, above, the Plaintiff's Second Amended Complaint and Third Party Complaint clearly implicate the adequacy of design services rendered by Architecture: Kalkreuth has alleged that Architecture was negligent by failing to analyze, consider, reinforce or otherwise design the structure of the facility in order to withstand not only the added weight of components introduced by its designs, but also the amount of rainfall that occurred at the time of the Plaintiff's loss, which would support a finding of original tort liability to the Plaintiff. These allegations in the context of the active/passive negligence analysis more than sufficiently state a claim by Kalkreuth for negligence-based indemnity against Third-Party Defendant Architecture and the Motion to Dismiss must be denied.

Furthermore, Architecture is not correct that the allegations in the Complaint and Third-Party Complaint only reflect "active" negligence. While a defendant may seek indemnification in Maryland only when its liability is passive or secondary, to state a claim for indemnification, the allegations of the Plaintiff's Complaint and the Third-party Complaint need only show that the defendant/third party plaintiff's negligence may *plausibly* be characterized as passive, while the third-party defendant's negligence may be found to be active. See, *Erson v. International Special Attractions, Ltd.*, 2014 WL 3055554 (D. Md. July 1, 2014), quoting *Richards v. Freeman*, 179 F. Supp. 2d 556, 560 (D. Md. 2002). In *Erson*, the plaintiff alleged that the defendant, ISA, had created a dangerous condition on its property by failing to provide stairs leading from a trailer on site (causing plaintiff to fall and sustain severe injuries), and ISA in turn alleged that the third-party defendant, Ryman, supplied the trailer where the dangerous condition existed. The district court explained that based upon those allegations, the factfinder could ultimately find that Ryman's negligence in failing to provide a trailer free from hazardous conditions was active, while ISA's failure to discover or remedy the hazardous condition was

only passive. *Id.* at *8, citing *Pyramid Condominium Assoc. v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985). Given that plausible scenario, the court held that the third-party plaintiff stated a claim for indemnity from the third-party defendant. *Id.*

As in *Erson*, in this case Plaintiff has asserted allegations of both active and passive negligence against Kalkreuth, which create a viable basis for Kalkreuth's indemnity claim against Architecture. For example, the factfinder could determine that Architecture's failure to adequately consider in the design process the impacts the design changes would have on the capacity of the Building's existing structural system, was the primary cause of the structural failure when faced with a rainfall of any significance, such as that which occurred on September 29, 2015. Similarly, a factfinder could determine that Architecture's failure to analyze the adequacy of the roof's existing drainage system itself and to take notice that there was no secondary overflow system, constituted active negligence, while Kalkreuth's alleged failure to discover or address that design defect was merely passive.

To this end, the Plaintiff's allegations that Kalkreuth was negligent by failing to provide rooftop drain assemblies, failing to recommend or advise Southern Research about the potential of the drains becoming clogged or the option of installing a secondary drainage system, and failing generally to "maintain" the roof (particularly where Kalkreuth had no contractual obligation to do any of these things), specifically demonstrate facts which once proven, may support a finding of passive negligence on the part of Kalkreuth at the time of trial. *See* 2d Am. Compl. ¶¶ 13; 27-28). Given this plausible scenario demonstrating passive negligence on the part of Kalkreuth, among other scenarios, Architecture's Motion as to the indemnity claim (Count I) must be denied.

### III. COUNT II STATES A VALID CLAIM FOR CONTRIBUTION

As to Count II, Architecture argues that Kalkreuth relies upon an "entirely different theory" from Plaintiff's theory of negligence asserted as to Kalkreuth, and that this difference renders Kalkreuth's contribution claim deficient as a matter of law. Architecture's position is unsupported by the law of contribution in Maryland. Simply put, to state a claim for contribution, Kalkreuth need only allege that it and the third-party defendant(s) are jointly or severally liable in tort for the same injury claimed by Southern Research (i.e., the structural collapse that occurred on September 29, 2015). See, Md. Code Ann., Courts & Jud. Proc. § 3-1401(c) (Maryland's Uniform Contribution Among Tort-Feasors Act, "UCATA"). As the court explained in *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 687 (2000), contribution "rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Id.*

Here, Kalkreuth has alleged classic circumstances giving rise to common liability. While Plaintiff alleges that Kalkreuth was negligent by failing to design, install, recommend or advise Southern Research regarding the roof membrane it installed and the related drainage system present on the roof, Kalkreuth asserts that it owed no duties of this nature to the Owner, but that Architecture and the other third-party defendants, as parties owing a professional duty of care to the Owner, were at least also negligent by failing to properly ensure the structural soundness of the Building in providing their design services, including but not limited to, in their design of the additions and renovations to the structure of the Building as well as the design of the roof and drainage system. While Architecture's negligence may ultimately be determined to arise from an act separate from Kalkreuth's negligence, if the fact finder determines, for example, that Architecture negligently failed to consider the structural capacity of the Building in connection

6

with the modifications or alterations to the Building that it designed, and Kalkreuth negligently failed to install drain covers on the roof when it installed the waterproof membrane, and that the combined negligence of both contributed to the September, 2015 Building collapse, then both parties will be considered tortfeasors as a matter of law and Kalkreuth will be entitled to contribution from Architecture.

Moreover, Kalkreuth's allegations supporting its right to contribution are sufficiently detailed to overcome a motion to dismiss under Rule 12(b)(6). Contrary to Architecture's assertions, Kalkreuth has identified the professional services rendered and the time frame during which those services were rendered. Kalkreuth alleges that Architecture provided architectural services to Southern Research. Third-Party Compl. ¶ 5. Kalkreuth alleges that Southern Research engaged Architecture in or about 2011, on an ongoing basis to provide professional design and construction administration work in conjunction with renovations to the Building, and specifically that the construction services pursuant to Architecture's designs and related construction administration services by Architecture were provided as late as 2006 and through and including 2011, and resulted in the Building's structural system being over-weighted such that it failed on September 29, 2015. *Id.* ¶13-14.

Kalkreuth alleges that Architecture was engaged by Southern Research to prepare design plans for mechanical and structural renovations for the Building, which renovations may have included services provided immediately prior to Kalkreuth's roof membrane installation in 2011. *Id.* ¶ 15. Kalkreuth also avers that the renovations were performed to upgrade or alter the biological laboratories present in the Building, and that the renovations therefore included the installation of additional structural and non-structural steel and specialized HVAC equipment,

7

which required extensive structural alterations to the Building. *Id.* ¶ 16. These allegations are sufficient.

Finally, Architecture suggests that Kalkreuth has not alleged whether any structural renovations occurred after 2005 and that therefore, the statute of repose bars Kalkreuth's third-party claims. This argument is also unsupported by law or the allegations contained in the Third-Party Complaint, and will be a factual question subject to the *discovery rule* once discovery is completed. Maryland's statute of repose only bars claims for damages when the subject injury occurs more than 10 years "after the date the entire improvement first became available for its intended use." Md. Code Ann. Courts & Jud. Proc. § 5-108. The allegations in the Third-Party Complaint describe negligent professional design or construction administration services provided by Architecture on projects completed *as late as* 2006 and 2011. The subject loss occurred on September 29, 2015. Kalkreuth's claims regarding services provided by Architecture at any time in connection with any projects at the Building that were completed on or after September 30, 2005, are timely and are not barred by the statute of repose.

## IV. ARCHITECTURE INC.'S MOTION BASED UPON THE FILING OF A CERTIFICATE OF MERIT IS PREMATURE

Architecture briefly asserts that Kalkreuth's claims for indemnity and contribution cannot be supported without the filing of a certificate of qualified expert ("Certificate") in support of its contentions regarding Architecture's failure to meet the applicable standard of care. Architecture's mere statement of the law concerning conditions precedent *which have yet to occur* is out of place, and do not provide any basis for dismissal at this time because the Certificate is not due for filing until ninety (90) days after the discovery requested from Architecture is produced. See, Md. Code Ann., Courts & Jud. Proc. § 3-2C-02:

(a)(2) A certificate of a qualified expert shall:

> … (ii) Subject to the provisions of subsections (b) and (c) of this section, be filed within 90 days after the claim is filed…
>
> (b)(1) Upon written request made by the claimant within 30 days of the date the claim is served, the defendant shall produce documentary evidence that would be otherwise discoverable, if the documentary evidence is reasonably necessary in order to obtain a certificate of a qualified expert.
>
> (2) the time for filing a certificate of qualified expert shall begin on the date on which the defendant's production of the documentary evidence under paragraph (1) of this subsection is completed.

As Architecture concedes, Kalkreuth served the discovery requests timely (i.e. by certified mail on July 24, 2017 and by email to counsel on July 31, 2017) and Architecture has stated that it "will produce the requested documents." Mem., p.10. The ninety-day filing period has not yet begun to run, and consequently Architecture's Motion on this ground must be denied as premature. [2]

### V. CONCLUSION

For the reasons set forth herein above, Kalkreuth Roofing and Sheet Metal, Inc. respectfully requests that this Court deny Architecture, Inc.'s Motion to Dismiss under Federal Rule 12(b)(6) in its entirety.

*Respectfully Submitted,*

*/s/Howard S. Stevens*
Howard S. Stevens
Fed. Bar No. 25587

*/s/Meighan G. Burton*
Meighan G. Burton
Fed. Bar No. 28022

---

[2] While at this stage Kalkreuth does not concede that a Certificate is required and reserves the right to file a motion to modify, waive or extend the Certificate requirement, Kalkreuth has complied with § 3-2C-02 to date and this Court cannot dismiss the Third-Party Complaint on these grounds until, and unless, there is a determination that (1) a Certificate is required and (2) a Certificate is not timely filed.

PASCALE STEVENS, LLC
2700 Lighthouse Point East Suite 320
Baltimore, Maryland 21224
HStevens@pascalestevens.com
MBurton@pascalestevens.com
(443) 863-5748

*Counsel for Defendant Kalkreuth Roofing and Sheet Metal, Inc.*