# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XL INSURANCE AMERICA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KALKREUTH ROOFING AND SHEET ) <br> METAL, INC. ) <br> ) <br> Defendant. ) <br> ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) <br> ) <br> KALKREUTH ROOFING AND SHEET ) <br> METAL, INC. ) <br> ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARCHITECTURE, INC., et al., ) <br> ) <br> Third-Party Defendants. ) | Civil Action No. 1:17-cv-00384-JFM |

### ARCHITECTURE INC.'S OPPOSITION TO
### KALKREUTH'S MOTION FOR WAIVER OR MODIFICATION

Defendant, Architecture Inc. ("Architecture"), by counsel, states as follows in opposition to Kalkreuth Roofing and Sheet Metal, Inc.'s ("Kalkreuth") Motion for Waiver or Modification:

**I.  Introduction**

This litigation arises from a partial building collapse that occurred during a heavy rainstorm in 2015.[1] The Plaintiff, XL Insurance America, Inc. ("XL"), filed the primary action

---

[1] Total rainfall at the site is estimated to have been at least 4.5 to perhaps as much as 6 inches in less than six hours. Flash flooding was reported throughout Frederick County in the aftermath of the storm.

1

on behalf of its insured, Southern Research Institute ("Southern Research"), who owns the building.  XL alleged that Kalkreuth, a roofing contractor, caused the collapse by failing to properly install a roof membrane on the building.  Specifically, XL alleged that Kalkreuth's improper installation completely covered one roof drain, partially obstructed the remaining three roof drains, and omitted strainers that would prevent further clogging of the drains by debris on the roof.  *See* Compl. ¶¶ 8-11, ECF No. 19.  Kalkreuth also failed to re-secure roof elements (which resulted in further blockage of the drains) and failed to recommend a secondary drainage system (which would prevent flooding on this relatively flat roof if the roof drains were blocked).  *Id.* ¶¶ 12-13.  XL's entire lawsuit relies on a theory that Kalkreuth's improper roof installation prevented rainwater from draining off the roof, and the weight of that accumulated rainwater eventually overwhelmed the building's structure, causing the collapse.

Kalkreuth filed its Third-Party Complaint against architecture and engineering firms who provided professional design services to Southern Research as far back as 1997.  Third-Party Compl. ¶ 15, ECF No. 32.  Kalkreuth re-interpreted XL's allegations as challenging the "sufficiency of the Building's structure to sustain and support the extra weight on the roof …" *Id.* ¶ 13.  Kalkreuth alleged that the third-party defendants – architect, structural engineer and MEP engineer – each breached the standard of care applicable to their respective disciplines by failing to consider whether the structure could support not only features they added to the building through their designs, but also "the allegedly deficient roofing system, that the Building's structure might fail if a significant rain or snow event occurred."  Third-Party Compl. ¶ 20, ECF No. 32.

In its present motion, Kalkreuth moves the Court to either waive or modify Kalkreuth's statutory obligation to file a certificate of a qualified expert ("CQE").  Architecture avers that

2

there is no professional duty for an architect or engineer to anticipate potential *construction defects* or the owner's failure to keep debris out of the drains, much less to speculate about how either could affect the building's structure during an extreme weather event.  The lack of any such duty is why Kalkreuth is unable to meet its statutory burden.

Not even XL is asserting any claims against the third-party design defendants, and XL is the subrogee of the party to whom the design defendants owed whatever duty is at issue in Kalkreuth's Third-Party Complaint.  This case is not about a design problem; it is about some combination of a construction defect problem, possibly a maintenance problem, and an overwhelming rainfall.  Maryland's statutory requirement for a CQE is a safeguard to protect defendants, such as Architecture, from the burden and expense of defending malpractice claims until a similarly licensed professional opines that the theory of professional malpractice has merit.

Kalkreuth's motion should be denied, and the Third-Party Complaint should be dismissed without prejudice if Kalkreuth fails to file a CQE by the statutory, ordered or agreed deadline.

## II. Applicable Law

The requirements of Maryland Code, Courts and Judicial Proceedings § 3-2C-02 are clear:

> (a)(1)  Except as provided in subsections (b) and (c) of this section, *a claim shall be dismissed,* without prejudice, if the claimant fails to file a certificate of qualified expert with the court.

(emphasis added).  The two referenced exceptions include: (b) a request by the plaintiff for discovery from the defendant to support such a certificate; and (c) a written request by claimant and a *finding of good cause by the court*, to waive or modify the requirement.  Kalkreuth has already exhausted the first exception, and Kalkreuth is now seeking relief under the second.

3

The content of a CQE must include "a statement from a qualified expert attesting that the licensed professional failed to meet an applicable standard of professional care." *Id.* In other words, if a plaintiff is unable to find any expert who will endorse the plaintiff's general theory of malpractice, then there is no reason for the plaintiff's professional malpractice case to proceed.

The most instructive case on the application of this statutory requirement is *Heavenly Days Crematorium, LLC v. Harris, Smariga and Associates, Inc.*, 433 Md. 558, 72 A.3d 199 (2013). At the outset of that opinion, the Court of Appeals explained the purpose of this CQE requirement:

> Those who belong to certain professions are often said to "practice" the profession. They enter into special relationships with their clients or customers and assume enhanced duties of care. They are expected to act in accordance with the "standard of care" for their profession. A negligent failure to satisfy the "standard of care" is often referred to as "malpractice." The doctrine of *respondeat superior* can also apply.
>
> When professional malpractice is alleged, it is often thought that factfinders who are not members of the particular profession may have difficulty understanding the standard of care against which the defendant's actions are to be measured without the assistance of expert opinion. Accordingly, *it is also thought that a prospective plaintiff should obtain a favorable expert opinion at the outset as a prerequisite to prosecuting a malpractice case*.
>
> Professional engineers are one such profession. The General Assembly has determined that, *before one may prosecute a suit alleging a breach of the standard of care owed by a professional engineer to a client, the plaintiff ordinarily must obtain and file a "certificate of a qualified expert" attesting that the engineer failed to satisfy that standard.* … The Legislature has allowed for cases in which an expert certificate should not be a prerequisite to suit by granting courts discretion to waive or modify the certificate requirement on motion of the plaintiff—a motion that tolls the deadline for filing the certificate.

*Id.*, 433 Md., at 561, 72 A.3d, at 200 (emphasis added).

Later in the opinion, the Court of Appeals reiterated why the General Assembly allowed discretion when there is a "finding of good cause" to waive this CQE requirement:

4

> It may be that the alleged deviation from the standard of care by a "licensed professional" is so obvious that it would be unnecessary to have expert testimony to prove it. … But that does not render the certificate statute inapplicable. Rather, *it may be good cause for a court to modify or waive the certificate requirement* pursuant to the statute.

*Id.*, 433 Md., at 577, 72 A.3d, at 210 (emphasis added). "Good cause" does not encompass the plaintiff's own difficulty in meeting its statutory burden — "good cause" simply relieves the plaintiff of a burden it would not otherwise have at trial.

### III. <u>Argument</u>

Architecture anticipated that Kalkreuth would be unable to meet its statutory burden to obtain a CQE. That is why this issue was pre-emptively raised in Architecture's Motion to Dismiss under Rule 12(b)(6). *See* Reply in Supp., at 9-10, ECF No. 66.

Kalkreuth argues that a requirement to file a CQE in this case is "premature, and ultimately unnecessary in this proceeding …" Mot. for Waiver, at 2, ECF No. 74. Kalkreuth's clearest statement of its argument is found in Paragraph 43 of its Motion, where it states:

> As a practical matter, even if sufficient documentary evidence were produced to date, the Certificate itself provides no further support for Kalkreuth's claims against Third-Party Defendants which would not otherwise be addressed by Kalkreuth's Rule 26(a)(2)(B) Expert Disclosures.

Kalkreuth's argument turns the legislative purpose of this CQE requirement on its head. A CQE is a preliminary *prerequisite* for a malpractice lawsuit, not a disclosure of testifying experts.

If Kalkreuth cannot, within the permitted time, find any qualified expert who is willing to "attest[] that [Architecture] failed to meet an applicable standard of professional care," then the Third-Party Complaint must be dismissed. Md. Code, Cts. And Jud. Proc. § 3-2C-02(a)(2). The statute does not require Kalkreuth to review every project document reaching back to 1997. Nor does the statute require Kalkreuth's CQE to mirror a Rule 26(a)(2)(B) disclosure. Kalkreuth simply must file a document evidencing that a qualified expert—an individual who is qualified to

opine about how the applicable standard of care relates to the underlying facts—agrees with Kalkreuth's malpractice theory. It is irrelevant under the statute whether Kalkreuth believes it has a strong case or whether Kalkreuth plans to later disclose a testifying expert under Rule 26(a)(2)(B).

The mere fact that this litigation arises from a structural collapse does not suggest that there is "good cause" to waive the CQE requirement. *Contra*, Mot. to Waive ¶ 41, ECF No. 74. It is undisputed that the event triggering this structural failure was an unprecedented quantity of water accumulating on the roof. *E.g.*, Compl. ¶ 14, ECF No. 19. XL alleged that the water accumulated because Kalkreuth clogged the drains. *Id.* Kalkreuth responded that the water accumulated either due to the contributory negligence of Southern Research (presumably failing to keep the drains clear) or due to an "Act of God." Kalkreuth's Answer, ECF No. 31 (Thirteenth and Sixteenth Defense). Kalkreuth's third party complaint suggests a third possible explanation for the collapse: insufficient structural support for water that accumulates because drains become blocked or clogged years later. Expert testimony is necessary to support Kalkreuth's proposition that Architecture was obligated, as an <u>architect</u>, to accommodate this unprecedented, unanticipated volume of water through whatever architectural services they provided years earlier.

Architecture would be prejudiced by the relief Kalkreuth requests. *Contra* Mot. for Waiver ¶ 38, ECF No. 74. As acknowledged by Kalkreuth's motion, the current "posture of this litigation" is that no depositions have been taken, no scheduling order has been issued, and the discovery process, in general, has been delayed. *See* Mot. for Waiver ¶¶ 36-38, ECF No. 74. This is an appropriate time, as contemplated by the General Assembly, to put Kalkreuth to its

6

burden of filing a CQE *before* the third-party defendants incur the burden and expense of discovery.

Finally, Architecture is an architecture firm—not an engineering firm. The practice of architecture and the practice of engineering are separately licensed professions. Kalkreuth therefore must provide a CQE attesting that Architecture breached the standard of care applicable to *architects* by failing to ensure that the building's structure was sufficient to support the volume of water that accumulated on the roof. *See* Third-Party Compl. ¶¶ 18-21, ECF No. 32. As to the other third-party defendants, Kalkreuth must file a CQE reflecting the applicable standard of care for their separate professions.

On August 24, 2017, Architecture produced its entire project files for design services its performed in 2005 and 2009 as requested. Kalkreuth has never objected to the quality or completeness of the production, or asked a single question about the production. On October 23rd, Architecture suggested December 1st as an agreed due date for the CQE so that the deadline would not fall over the Thanksgiving holiday and to account for delays while waiting for the Plaintiff to decide whether it would bring direct claims against some or all of the designers. Architecture is amenable to a later due date so long as discovery is stayed until the CQE is filed (or not filed) so that the intent of the statute is met. Architecture opposes ignoring the CQE requirement altogether.

## IV.  Conclusion

For the foregoing reasons, Architecture respectfully requests that Kalkreuth's Motion for Waiver or Modification be denied. Architecture hereby renews the related arguments from its Motion to Dismiss and requests that the Court dismiss the Third-Party Complaint without

prejudice if Kalkreuth fails to file a certificate of qualified expert by the statutory deadline, an agreed deadline or such deadline as the court may order.

Respectfully submitted,

ARCHITECTURE, INC.


By:_____/s/ James R. Jeffcoat_____
      Counsel

James R. Jeffcoat (MD Bar No. 30105)
GORMAN & WILLIAMS
36 South Charles Street, Suite 900
Baltimore, MD 21201
Phone: 410.464.7026
Fax:   410.528.0602
Email: jjeffcoat@gandwlaw.com

James W. Walker (*pro hac vice*)
Stephan F. Andrews (*pro hac vice*)
VANDEVENTER BLACK LLP
901 E. Byrd Street, Suite 1600
Richmond, VA 23219
Phone: (804) 237-8800
Fax: (804) 237-8801
jwalker@vanblacklaw.com
sandrews@vanblacklaw.com
*Counsel for Architecture, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of November, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Howard S. Stevens
Meighan Griffin Burton
PASCALE STEVENS LLC
2700 Lighthouse Point E. Suite 320
Baltimore, Maryland 21224
(443) 863-5758 – Telephone
(443) 863-5751 – Facsimile
hstevens@pascalestevens.com
mburton@pascalestevens.com
*Counsel for Kalkreuth Roofing and Sheet Metal, Inc.*

Joseph W. Cooch
Jonathan C. Shoemaker
Lee & McShane, PC
1211 Connecticut Ave., NW
Suite 425
Washington, DC 20036
(202) 530 8111 – Telephone
(202) 530-0402 – Facsimile
jwc@lee-mcshane.com
jcs@lee-mcshane.com
*Counsel for Allen & Shariff Corporation*

Matthew John Pavilides
Miles and Stockbridge
11 N. Washington St., Suite 700
Rockville, Maryland 20850
(301) 762-1600 – Telephone
(301) 841-7974 – Facsimile
mpavlides@milesstockbridge.com
*Counsel for Rathgerber/Goss Associates, Professional Corporation*

Michael Howard Burgoyne
Thomas Thomas and Hafer LLP
1829 Reisterstown Road, Suite 200
Baltimore, Maryland 21208

(410) 653-0460
(410) 484-2967 – Facsimile
mburgoyne@tthlaw.com
*Counsel for XL Insurance America, Inc.*

Mark C. Cavanaugh
Samuel J. Pace, Jr.
Dugan Brinkman Maginnis and Pace
1880 John F. Kennedy Blvd, Suite 1400
Philadelphia, PA 19103
(215) 563-3500 – Telephone
(215) 563-7654 – Facsimile
mccavanaugh@dbmplaw.com
sjpace@dbmplaw.com
*Counsel for XL Insurance America, Inc.*

\_\_\_\_\_/s/ James R. Jeffcoat\_\_\_\_\_

4813-1097-3006, v. 1