IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

XL INSURANCE AMERICA, INC.,
as subrogee of SOUTHERN
RESEARCH INSTITUTE, INC.

    *Plaintiff*,

    *v.*

KALKREUTH ROOFING & SHEET
METAL, INC.,

    *Defendant/Third-Party Plaintiff*,


    *v.*

ARCHITECTURE, INC.,
RATHGEBER/GOSS ASSOCIATES,
PROFESSIONAL CORPORATION,
ALLEN + SHARIFF CORPORATION,

    *Third-Party Defendants.*

Civil Action No. ELH-17-384

**MEMORANDUM OPINION**

Plaintiff XL Insurance America, Inc. ("XL"), as subrogee of Southern Research Institute,

Inc. ("SRI"), sued Kalkreuth Roofing and Sheet Metal, Inc. ("Kalkreuth") in the Circuit Court

for Frederick County. *See* ECF 2 ("Complaint"). Kalkreuth removed the case to federal court on

the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. *See* ECF 1 (Notice of

Removal).[1]

In the Second Amended Complaint (ECF 19), plaintiff asserts claims of negligence and

breach of contract against Kalkreuth in relation to renovations completed by Kalkreuth in 2011

on the roof of an SRI building located in Frederick, Maryland (the "Facility"). According to XL,

_____

[1] The case was initially assigned to Judge J. Frederick Motz. It was subsequently
reassigned to me.

on September 29, 2015, a portion of the Facility roof collapsed after a heavy rainstorm (the "Collapse"), because Kalkreuth obstructed the roof's water drainage system during the 2011 renovation process. In particular, plaintiff claims that Kalkreuth reduced the capacity of the drains, failed to properly secure the roof "membrane" to the drains, and failed to install a recommended secondary drainage system. ECF 19, ¶ 17. As a result, the roof was subjected to "a large ponding of water." *Id.* ¶ 14. And, the "weight of the ponded water" caused the roof to collapse. *Id.* Plaintiff contends that it did not and could not have known of the defects prior to the occurrence. *Id.* ¶¶ 15, 19.[2]

Pursuant to Fed. R. Civ. P. 14(a)(1), Kalkreuth lodged a Third Party Complaint against Architecture, Inc. ("Architecture"); Rathgeber/Goss Associates, Professional Corporation ("Rathgeber/Goss"); and Allen + Shariff Corporation ("A&S") (collectively, the "Third-Party Defendants"), seeking indemnification and/or contribution in the event Kalkreuth is found to be liable for the Collapse. *See* ECF 32.[3] According to Kalkreuth, work performed by the Third-Party Defendants on the Facility during 2006 and 2011 weakened the building's structure, thereby causing the Collapse in 2015. *Id.*

Kalkreuth also filed a "Motion for Waiver or Modification of Certificate of Qualified Expert Requirements" (ECF 74) (hereinafter, the "Expert Motion"), with exhibits. *See* ECF 74 at 12-23. In the Expert Motion, Kalkreuth asks the Court to waive or modify the "certificate of qualified expert" requirement (the "Certificate Requirement"), established by Md. Code (2013

---

[2] By Order of June 1, 2017 (ECF 29), Judge Motz denied Kalkreuth's Motion to Dismiss the Second Amended Complaint (ECF 24).

[3] By Order of September 18, 2017 (ECF 68), Judge Motz denied Architecture's Motion to Dismiss the Third-Party Complaint (ECF 60). The Third-Party Defendants have each answered. *See* ECF 52 (Rathgeber/Goss); ECF 54 (A&S); ECF 71 (Architecture).

Repl. Vol., 2017 Supp.), §§ 3-2C-01 *et seq.* of the Courts and Judicial Proceedings Article ("C.J."). The Third-Party Defendants oppose the Expert Motion. *See* ECF 75 (Architecture); ECF 76 (A&S); ECF 77 (Rathgeber/Goss). Rathgeber/Goss and A&S have also submitted exhibits in support of their oppositions. *See* ECF 76-1 (A&S exhibits); ECF 77-1 through ECF 77-4 (Rathgeber/Goss exhibits). Kalkreuth has filed a consolidated Reply. ECF 84.

While the Expert Motion was under advisement, Kalkreuth filed three Qualified Expert Certificates. *See* ECF 101 (Certificate of Stephen Burdette, A.I.A., N.C.A.R.B., L.E.E.D. A.P.; ECF 102 (Certificate of Marco Legaluppi, P.E.; ECF 104 (Amended Certificate of Michael Purtell, P.E.).[4]

Additionally, Kalkreuth filed a "Motion for Leave to File Amended Third Party Complaint" (ECF 86) (the "Motion to Amend"), along with a red-lined version of the proposed Amended Third-Party Complaint (ECF 86-3), a copy of the proposed Amended Third-Party Complaint (ECF 86-4), and exhibits. *See* ECF 86-1 and ECF 86-2. The Motion to Amend seeks to add Allen & Shariff Engineering, LLC ("A&S Engineering") as a third-party defendant. *See* ECF 86. The Third-Party Defendants oppose the Motion to Amend. *See* ECF 87 (Rathgeber/Goss); ECF 88 (Architecture); ECF 89 (A&S). Kalkreuth has filed a consolidated Reply. *See* ECF 94.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion to Amend. Additionally, I shall grant the Expert Motion in part and deny it in part. In particular, I shall grant the Expert Motion as to Kalkreuth's request to modify the Certificate Requirement deadlines as to Architecture, A&S, and

---

[4] Kalkreuth had filed an initial certificate for Purtell on April 3, 2018. *See* ECF 100. On April 30, 2018, Kalkreuth amended the certificate. *See* ECF 104.

Rathgeber/Goss. But, in regard to Kalkreuth's request to waive the Certificate Requirement, I shall deny the Expert Motion. Moreover, Kalkreuth must file a certificate as to A&S Engineering within 90 days of the date the attached Order is docketed.

## I.     Factual and Procedural Background[5]

SRI is an Alabama corporation with its principal place of business in Birmingham, Alabama. ECF 19, ¶ 2. SRI owned, operated, and controlled the Facility located in Frederick, Maryland. *Id.* XL is a Delaware corporation with its principal place of business in Stanford, Connecticut. *Id.* ¶ 1. XL insured SRI under a policy that provided coverage for property damage at the Facility, as well as business loss (the "Policy"). *Id.* ¶ 21.[6]

Kalkreuth is a West Virginia corporation with its principal place of business in Wheeling, West Virginia. ECF 32, ¶ 4. Kalkreuth maintains an office in Frederick, Maryland. *Id.* According to XL, Kalkreuth is a "roofing contractor specializing in the field of . . . commercial roofing[.]" ECF 19, ¶ 7.

Architecture is a Virginia corporation with its principal place of business in Reston, Virginia. ECF 32, ¶ 5. According to Kalkreuth, Architecture "provided architectural services" to SRI at "all relevant times." *Id.* Rathgeber/Goss is a Maryland professional corporation with its principal place of business in Rockville, Maryland. *Id.* ¶ 6. According to Kalkreuth, Rathgeber/Goss is a structural engineering firm that "at all relevant times" provided structural engineering services to SRI, "either directly or through Architecture." *Id.* A&S is a Maryland corporation with its principal place of business in Columbia, Maryland. *Id.* ¶ 7. According to

---

[5] In the posture of this Memorandum Opinion, I recount the parties' allegations without drawing conclusions of fact or law as to the merits of the underlying suit.

[6] Kalkreuth's Third-Party Complaint expressly incorporates the allegations contained in XL's Second Amended Complaint. *See* ECF 32, ¶ 9.

Kalkreuth, "[a]t all relevant times" A&S provided mechanical, electrical, and plumbing engineering services to SRI, "either directly or through Architecture." *Id.*

In 1996, Kalkreuth contracted with SRI to "replace" the roof of the Facility. ECF 19, ¶ 6. The roof consisted of "a single slope", running "from front to back (east to west)." *Id.* ¶ 8. Additionally, the roof contained a water drainage system, consisting of "an approximate seven (7) inches wide by seven (7) inches deep internal gutter running the length of the west wall[.]" *Id.* The "internal gutter" connected to four separate "drain conductor pipes" that "divert[ed] water from the roof." *Id.* Each conductor pipe was connected to a "rooftop drain[.]" *Id.* In other words, four rooftop drains allowed storm water on the roof to flow into conductor pipes that then carried the water to an internal gutter.

According to Kalkreuth, in 1997 SRI retained Architecture "to prepare design plans for multiple structural and mechanical renovations" to the Facility. ECF 32, ¶ 15. The renovations allegedly included "installation of additional structural and non-structural steel, specialized mechanical/HVAC equipment and ductwork, as well as extensive structural alterations" to the Facility. *Id.* ¶ 16. Kalkreuth avers that Architecture provided additional renovation services to the Facility in 2006 and 2011. *Id.* ¶¶ 15, 17.

On November 11, 2010, Kalkreuth provided a proposal to SRI to replace the roof at the Facillity. ECF 19, ¶ 33. XL claims that SRI accepted the proposal and Kalkereuth furnished a purchase order to SRI on December 20, 2010. *Id.* ¶ 34; *see also* ECF 2-1.[7] Kalkreuth replaced the roof of the Facility "with a Firestone EPDM roof overlay." ECF 19, ¶ 6. The "overlay" consisted of "rubber roof material", also referred to as "roof membrane." *Id.* ¶¶ 9-10.

---

[7] XL states that it attached a copy of the Final Proposal and Purchase Order to ECF 19. However, there is no indication on the docket that it did so.

According to XL, during the 2011 roof renovation, Kalkreuth "placed roof membrane" over one of the rooftop drains, causing the drain to be "completely concealed." *Id.* ¶ 9. XL also avers that Kalkreuth "reduced the capacity of the remaining three drains . . . by placing rubber roof material within and around [their] opening[s]", causing two of those drains to become "partially or completely clogged by debris." *Id.* ¶¶ 10, 14. Further, XL contends that Kalkreuth failed to install "strainers" on the rooftop drains, thereby allowing debris to flow into, and clog, the rooftop water drainage system. *Id.* ¶ 11. And, XL avers that Kalkreuth "failed to properly resecure . . . EPDM roof pads and pipe supports", causing "partial blockage of the drains" during rainstorms. *Id.* ¶ 12.

At approximately 9:53 p.m. on September 29, 2015, the "southwest corner of the roof . . . collapsed due to an accumulation of water . . . from a significant rain storm" on that date. ECF 19, ¶ 5. According to XL, the roof "failed to discharge rainwater[,] resulting in a large ponding of water", the weight of which "was overwhelming for the roof structure[.]" *Id.* ¶ 14. Further, XL avers that the Collapse caused "significant property damage" to the Facility. *Id.* ¶ 14.

Pursuant to XL's Policy with SRI, XL paid damages sustained by SRI as a result of the Collapse. This included property damage and business loss. *Id.* ¶ 22.[8]

As noted, in the Second Amended Complaint (ECF 19), XL asserts claims against Kalkreuth for breach of contract and negligence. XL alleges that Kalkreuth breached the standard of care in its work on the Facility's roof in 2011, thereby causing the Collapse in 2015. *Id.* ¶ 35. Further, XL contends that Kalkreuth violated its agreement with SRI to replace the roof in "a professional and workmanlike manner." *Id.*

---

[8] XL does not specify the amount that it paid in damages. However, it demands judgment in excess of $75,000.

However, according to Kalkreuth, "on an ongoing basis," SRI "engaged" Architecture, and Architecture "engaged" Rathgeber/Goss and Allen + Shariff, to "provide professional design and construction administration services in conjunction with the renovation work" at the Facility. ECF 32, ¶ 13. Kalkreuth claims that Architecture, Rathgeber/Goss, and A&S "were each part of the 'design team' for both the 2006 and 2011 renovations" of the Facility. ECF 32, ¶ 17. Therefore, according to Kalkreuth, the Third-Party Defendants were "responsible for the structural design" and were "responsible for ensuring the structural soundness" of the Facility. ECF 32, ¶¶ 17, 18.

In the Third-Party Complaint (ECF 32), Kalkreuth claims that if it is found liable to XL for the Collapse, it is entitled to "damages, under the laws of indemnity and/or contribution", from Architecture, Rathgeber/Goss, and/or A&S. *Id.* ¶ 23. In particular, Kalkreuth avers, *id.* ¶¶ 19-20:

> . . . [E]ven if water accumulated on the [Facility's] roof . . . , the resulting failure of the . . . structure was caused by the combined negligence of the Third-party Defendants, in . . . failing to ensure that the Building's structure was sufficiently sound to support the additional weight of the additional structural and supporting steel, and additional mechanical, electrical and plumbing systems which were installed in the Building pursuant to the Third-party Defendants' designs for the Building in connection with the 2006 and 2011 Projects.

> . . . [H]ad the structure of the [Facility] been properly analyzed, considered and reinforced in conjunction with the Third-party Defendants' design services, the Third-party Defendants should have known, in exercise of the standard of care, that the additive weight in combination with a) increased point loading of existing structural members resulting from the Third-party Defendants' designs and b) the allegedly deficient roofing system, that the Building's structure might fail if a significant rain or snow event occurred.

> Additional facts are included in the Discussion.

## II.    Discussion

### A.  The Motion to Amend

Kalkreuth alleges in the Motion to Amend (ECF 86) that documents provided by the Third-Party Defendants, and a review of records obtained from the Maryland State Department of Assessments and Taxation, reveal that "in January 2007, a limited liability company known as Allen & Shariff Engineering, LLC . . . was formed." *Id.* ¶ 11.  According to Kalkreuth, A&S Engineering and A&S "appear to be distinct, but related entities, which provide the same or similar . . . engineering services and operate from the same principal office in Columbia Maryland." *Id.*  Kalkreuth asserts that A&S Engineering was the "engineering firm that provided services relative to the renovations of the [Facility] that took place in or around 2009-2011." *Id.* ¶ 12.  Therefore, Kalkreuth seeks to amend the Third-Party Complaint to add A&S Engineering as a third-party defendant.  *Id.*

Notably, the proposed Amended Third-Party Complaint names an additional third-party defendant, but does not otherwise significantly alter the substance of the original Third-Party Complaint.   *See* ECF 32; ECF 86-4.   For example, the proposed Amended Third-Party Complaint includes minor factual alterations pertaining to the periods of time during which SRI retained the Third-Party Defendants to perform work on the Facility.  ECF 86-3 at 5-7; *see also* ECF 86-4, ¶¶ 17-22.  In particular, the proposed Amended Third-Party Complaint specifies that the Third-Party Defendants were involved in two renovations: the first renovation "took place in or around 2005 through 2006", and the second renovation occurred from "2009 through 2011." ECF 86-3 at 6; *see also* ECF 86-4, ¶ 22.  Further, the proposed Amended Third-Party Complaint adds two paragraphs clarifying the claims already lodged against the original Third-Party Defendants, but does not add a new claim as to them.  *See* ECF 86-3 at 8; ECF 86-4, ¶¶ 26-27.

As noted, Architecture (ECF 88) and A&S (ECF 89) filed oppositions to the Motion to Amend. Yet, they have both stated that they "do[] not object to the relief requested in Kalkreuth's motion." ECF 89 (A&S), ¶ 3; *see* ECF 88 (Architecture), ¶ 3.

Rathgeber/Goss opposes the Motion to Amend. ECF 87. But, it has provided no argument under Fed. R. Civ. P. 15 as to why the proposed Amended Third-Party Complaint is improper. Rather, Rathgeber/Goss argues, pursuant to Fed. R. Civ. P. 8(a)(2), that "[t]he proposed Amended Complaint fails to contain any allegation that Rath[geber]/Goss specifically performed any particular work which caused or contributed to the partial roof collapse in the northwest region of the Facility." ECF 86, ¶ 8. On that ground, Rathgeber/Goss asks the Court to deny the Motion to Amend or, in the alternative, to require Kalkreuth to make a "more definite statement", pursuant to Fed. R. Civ. P. 12(e). *Id.*

As to Rathgeber/Goss, there are no new claims or facts in the proposed amended Third-Party Complaint. Moreover, it did not move to dismiss the original Third-Party Complaint, which is largely the same as the proposed amended version.

## 1.

Fed. R. Civ. P. 14(a)(1) states, in part, *id.*: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." A Rule 14(a)(1) impleader suit does not require an independent basis for federal jurisdiction, *i.e.*, complete diversity or federal question jurisdiction. *See, e.g.*, 6 ALAN WRIGHT & ARTHUR MILLER *ET AL.*, FEDERAL PRACTICE & PROCEDURE § 1444 (3d ed.). "Because [the] defendant's right of action against the third-party under Rule 14 must be based on the same aggregate of facts that constitute [the] plaintiff's claim, it follows that a court having jurisdiction over plaintiff's claim needs no additional jurisdictional ground to determine a third-

party claim springing out of the same core of facts." *Id.*; *see also NGM Ins. Co. v. Jenkins*, 09-cv-45, 2009 WL 1704383, at *4 (D. Md. June 12, 2009) ("'[A] third-party complaint does not require an independent jurisdictional basis when diversity of citizenship exists between the original parties.'") (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 569 n.2 (2d Cir. 2005)).

As indicated, Kalkreuth removed the case based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a).  *See* ECF 2; ECF 19.  Section 1332(a) grants jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different States[.]"  28 U.S.C. § 1332(a)(1).

No party has challenged the Third-Party Complaint (ECF 32) or the proposed Amended Third-Party Complaint (ECF 86-4) on jurisdictional grounds.  Additionally, the claims asserted by Kalkreuth against the Third-Party Defendants arise from the same facts and circumstances forming the basis of XL's suit against Kalkreuth.  *See* ECF 19; ECF 32; ECF 86-4.  Moreover, determination of these related claims in a single trial would advance the interest of judicial economy.

**2.**

Kalkreuth's Motion to Amend implicates Fed. R. Civ. P. 15.  Rule 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave."  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  And, under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ."  *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

The "court should freely give leave [to amend] when justice so requires." *See Foman*, 371 U.S. at 182; *Simmons*, 634 F.3d at 769; *Laber*, 438 F.3d at 426. Indeed, *Foman*, 371 U.S. at 182, "mandates a liberal reading of the rule's direction for 'free' allowance: motions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.'" *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (quoting *Foman*, 371 U.S. at 182); *see Booth*, 337 F. App'x at 312.

"Delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990)). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

As noted, Architecture and A&S do not object to Kalkreuth's request to amend the Third-Party Complaint. *See* ECF 89, ¶ 3; ECF 88, ¶ 3. And, Rathgeber/Goss has failed to identify any viable reason to deny the Motion to Amend. *See* ECF 87. Moreover, I am unable to discern any potential prejudice that would be caused to the Third-Party Defendants by granting the Motion to

Amend.  Therefore, I shall grant Kalkreuth's Motion to Amend (ECF 86).

## B.  The Expert Motion

### 1.

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules.  *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007).  Regarding tort claims, such as the claims of negligence in the underlying suit (ECF 19) and the impleader action (ECF 32; ECF 86-4), Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti* ").  *See, e.g.*, *Proctor v. Wash. Metro. Area Transit Auth.,* 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan,* 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti,* 358 Md. 689, 744, 752 A.2d 200, 230 (2000).  Because the alleged events took place in Maryland, the substantive tort law of Maryland governs the claims of negligence.  *See Hauch v. Connor,* 295 Md. 120, 123–24, 453 A.2d 1207, 1209 (1983).

The Maryland "General Assembly has determined that, before one may prosecute a suit alleging a breach of the standard of care owed by a [licensed] professional . . . , the plaintiff ordinarily must obtain and file a 'certificate of a qualified expert' attesting that the [licensed professional] failed to satisfy that standard."  *Heavenly Days Crematorium, LLC v. Harris, Smariga & Assoc.*, *Inc.*, 433 Md. 558, 561, 72 A.3d 199, 200 (2013) (hereinafter, "*Heavenly Days*") (citing C.J. §§ 3-2C-01 *et seq.*).  The Maryland Court of Appeals has explained, *Heavenly Days*, 433 Md. at 561, 72 A.3d at 200: "When professional malpractice is alleged, it is often thought that factfinders who are not members of the particular profession may have difficulty understanding the standard of care against which the defendant's actions are to be measured without the assistance of expert opinion.  Accordingly, it is also thought that a

prospective plaintiff should obtain a favorable expert opinion at the outset as a prerequisite to prosecuting a malpractice action."

C.J. § 3-2C-01(c) defines "licensed professional" to include, *inter alia*, a licensed "architect" as well as a licensed "professional engineer." C.J. §§ 3-2C-01(c)(1), (c)(4). A "qualified expert" is "an individual who is a licensed professional, or comparably licensed or certified professional under the laws of another jurisdiction, knowledgeable in the accepted standard of care in the same discipline as the licensed professional against whom a claim is filed." C.J. § 3-2C-01(d)(1).

Pursuant to C.J. § 3-2C-01(a)(1), a malpractice claim against a licensed professional "shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the court." A "certificate of a qualified expert shall: (i) Contain a statement from a qualified expert attesting that the licensed professional failed to meet an applicable standard of professional care; (ii) Subject to the provisions of subsections (b) and (c) of this section, be filed within 90 days after the claim is filed; and (iii) Be served on all other parties to the claim or the parties' attorneys of record in accordance with the Maryland Rules." C.J. § 3-2C-01(a)(2).

However, the Certificate Requirement "does not apply to every action that might be brought against a licensed professional or the licensed professional's employer.[ ] It pertains only to actions alleging 'negligent act[s] or omission[s] in rendering professional services within the scope of the professional's license . . . .'" *Heavenly Days*, 433 Md. at 576, 72 A.3d at 209. In other words, the Certificate Requirement established in C.J. §§ 3-2C-01 *et seq.* "is triggered only when the complaint raises the issue of whether that licensed professional deviated from the standard of care for the profession." *Id.* at 576-77, 72 A.3d at 209. The Certificate Requirement "does not erect a special fence around licensed professionals that protects them from claims of

ordinary negligence that might be made against any other individual." *Id.* at 577, 72 A.3d at 210 (citing *Witte v. Azarian,* 369 Md. 518, 533-34 & n.2, 801 A.2d 160, 170 & n.2 (2002)).

Before filing a certificate, a claimant may seek production of documentary evidence from a defendant. *See* C.J. § 3-2C-01(b). In particular, "[u]pon written request made by the claimant within 30 days of the date the claim is served, the defendant shall produce documentary evidence that would be otherwise discoverable, if the documentary evidence is reasonably necessary in order to obtain a certificate of a qualified expert." C.J. § 3-2C-01(b)(1). Failure by a defendant to produce the requested documentary evidence "shall constitute a waiver" of the Certificate Requirement "as to that defendant." C.J. § 3-2C-01(b)(3). Further, when a claimant makes a written request for documentary evidence, "[t]he time for filing a certificate of a qualified expert shall [be 90 days after] the date on which the defendant's production of the documentary evidence . . . is completed." C.J. §§ 3-2C-01(b)(2), (a)(1)(ii).

To be sure, there are instances when the alleged deviation from the standard of care by a licensed professional may be "so obvious that it would be unnecessary to have expert testimony to prove it." *Heavenly Days*, 433 Md. at 577, 72 A.3d at 210; *see Schultz v. Bank of America,* 413 Md. 15, 29, 990 A.2d 1078, 1086 (2010) ("[S]ometimes the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony."). In such a case, a court may find "good cause" to "modify or waive the certificate requirement." *Heavenly Days*, 433 Md. at 577, 72 A.3d at 210.

In particular, "[u]pon written request by the claimant and a finding of good cause by the court, the court may waive or modify the requirement for the filing of the certificate of a qualified expert." C.J. § 3-2C-01(c)(1); *see Kearney v. Berger*, 416 Md. 628, 658, 7 A.3d 593, 610 (2010) (discussing C.J. §§ 3-2A01 *et seq.*, which contains a certificate requirement as to

medical malpractice suits, and stating that what "'constitute[s] good cause [typically] fit[s] into several broad categories: excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), serious physical or mental injury and/or location out-of-state, the inability to retain counsel in cases involving complex litigation, . . . ignorance of the statutory [] requirement,' and 'where representations made by [] government representatives are misleading.'") (quoting *Rios v. Montgomery Cty.,* 386 Md. 104, 127-28, 872 A.2d 1, 14 (2005)) (some alterations added); *see also Heron v. Strader,* 361 Md. 258, 271, 761 A.2d 56, 63 (2000) (stating that good cause may exist when the complaining party exercised "'that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances'") (quoting *Westfarm Assoc. v. Wash. Suburban Sanitary Comm'n,* 66 F.3d 669, 676-77 (4th Cir. 1995)).

When a claimant files a written request pursuant to C.J. § 3-2C-01(c)(1), "[t]he time for filing the certificate of merit of a qualified expert *shall be suspended* until the court rules on the request and, absent an order to the contrary, the certificate shall be filed within 90 days of the court's ruling." C.J. § 3-2C-01(c)(2) (emphasis added). The Maryland Court of Appeals has said: "For [C.J. § 3-2C-01(c)(2)] to be operative, the time for filing the certificate cannot have expired when the request for waiver or modification is made; otherwise, there would be no time period for the request to suspend." *Heavenly Days*, 433 Md. at 577, 72 A.3d at 210.

In other words, "a motion to waive or modify the certificate requirement is to be filed within the time period for filing the certificate.[]" *Id.* (citation omitted). And, "[o]nce such a motion is filed, there is an automatic extension of the time for filing the certificate." *Id.* (citation removed). But, "the grace period should not be extended to parties who fail to timely file[.]" *Heritage Harbour LLC v. John J. Reynolds, Inc.,* 143 Md. App. 698, 708-10 n.4, 795

A.2d 806, 812 n.4 (2002).

**2.**

On October 27, 2017, Kalkreuth asked the Court either to waive the Certificate Requirement or modify it by extending the filing deadlines for the certificate as to Architecture, A&S, and Rathgeber/Goss. *See* ECF 74. In particular, Kalkreuth requested that the certificates be due on the same date as the Rule 26(a)(2) expert witness disclosure deadline. *Id.* at 11. Notably, when Kalkreuth made that request, a Rule 26(a)(2) disclosure deadline had not yet been established.

As noted, this case was originally assigned to Judge Motz. *See* Docket. On June 16, 2017, after Judge Motz had resolved the Motion to Dismiss the Second Amended Complaint (ECF 24; ECF 29), he held a Scheduling Conference with counsel. *See* Docket. No scheduling order was entered at that time. On June 28, 2017, Kalkreuth filed the Third-Party Complaint (ECF 32), which Architecture moved to dismiss (ECF 60).[9] On September 18, 2017, Judge Motz denied Architecture's Motion to Dismiss the Third-Party Complaint (ECF 68). Another Scheduling Conference was held by Judge Motz on September 27, 2017. *See* Docket. However, on October 25, 2017, before a Scheduling Order was issued, the case was reassigned to me. *Id.*

On October 26, 2017, I scheduled a status conference with counsel, to be held on November 9, 2017. ECF 73. However, before the date of that status conference, Kalkreuth filed the Expert Motion (ECF 74), requesting, *inter alia*, an extension of the certificate deadline, to coincide with the Rule 26(a)(2) disclosure deadline, which had not yet been set. *See* ECF 74.

I held a telephone conference with counsel on November 9, 2017. *Id.* That same day, I entered the Scheduling Order (ECF 78), setting Kalkreuth's Rule 26(a)(2) disclosure deadline as

---

[9] I can only assume that the Third-Party Complaint was discussed during the telephone conference on June 16, 2017.

March 16, 2018. *See id.* at 1. Although the Scheduling Order was later partially modified (*see* ECF 108), the Rule 26(a)(2) deadline remained unchanged.

On April 3, 2018, while the Expert Motion was still pending, Kalkreuth filed three certificates (ECF 101; ECF 102; ECF 104). They were filed about two weeks after the Rule 26(a)(2) deadline.

As indicated, "a claim shall be dismissed, without prejudice, if the claimant fails to [timely] file a certificate of qualified expert with the court." C.J. § 3-2C-02(a)(1); *see also* C.J. §§ 3-2C-02(a)(2)(ii), (b)(1), (b)(2), (c)(1), (c)(2). But, a court "may waive or modify" the Certificate Requirement when the claimant makes a timely "written request" and the court finds "good cause." C.J. § 3-2C-02(c)(1); *see Heavenly Days*, 433 Md. at 577, 72 A.3d at 210.

It is undisputed that Kalkreuth made a written request to waive or modify the Certificate Requirement. *See, e.g.*, ECF 74. However, the question is whether the written request was timely filed, and whether "good cause" exists, either for waiver or modification of the Certificate Requirement. *See* C.J. § 3-2C-02(c)(1).

### a.

As to the timeliness of the request, Kalkreuth avers that the Third-Party Defendants were served with a copy of the Third-Party Complaint on July 5, 2017. ECF 74, ¶ 19; *see also* ECF 37 (Affidavit of Service as to Rathgeber/Goss); ECF 38 (Affidavit of Service as to Architecture); ECF 39 (Affidavit of Service as to A&S). Then, on July 24, 2017, Kalkreuth sent a document request to each Third-Party Defendant, pursuant to C.J. § 3-2C-02(b)(1). *See* ECF 74, ¶ 25; *see also id.* at 12-15 (document request to Architecture); *id.* at 16-19 (document request to A&S); *id.* at 20-23 (document request to Rathgeber/Goss). Because these "written requests [were] made by

[Kalkreuth] within 30 days of the date the claim [was] served", the requests were timely.  C.J. § 3-2C-02(b)(1).

Therefore, "[t]he time for filing a certificate of a qualified expert" as to an individual third-party defendant fell "90 days after . . . the date on which [a third-party defendant's] production of the documentary evidence . . . [was] completed."  C.J. §§ 3-2C-02(a)(2)(ii), (b)(1), (b)(2).  On August 2, 2017, Kalkreuth received documents from Rathgeber/Goss.  ECF 74, ¶ 26.  Kalkreuth received documents from Architecture on August 24, 2017.  *Id.* ¶ 27.  And, on September 1, 2017, Kalkreuth received documents from A&S.  *Id.* ¶ 28.  Assuming these documents constituted "completed" productions, C.J. § 3-2C-02(b)(2), Kalkreuth was required to file a certificate as to Rathgeber/Goss by October 31, 2017; as to Architecture by November 22, 2017; and as to A&S by November 30, 2017.  C.J. §§ 3-2C-02(a)(2)(ii), (b)(1), (b)(2).

Kalkreuth filed the Expert Motion on October 27, 2017, seeking, *inter alia*, an extension of time to file the certificates.  *See* ECF 74.  Accordingly, the Expert Motion was filed before any certificate deadline had expired.  Therefore, as Kalkreuth correctly points out (ECF 74, ¶ 33), the Expert Motion was timely filed, which automatically suspended the certificate deadlines.  *See* C.J. §§ 3-2C-02(c)(1), (c)(2); *see also Heavenly Days*, 433 Md. at 577, 72 A.3d at 210.

I am satisfied that Kalkreuth timely filed a written request to modify or waive the Certificate Requirement, and that the certificate deadlines were thereby suspended, pending a ruling by this Court.  *See* C.J. §§ 3-2C-02(c)(1), (c)(2); *see also Heavenly Days*, 433 Md. at 577, 72 A.3d at 210.

**b.**

As to good cause, Kalkreuth contends that the documents produced by the Third-Party Defendants contained "insufficient information to determine the extent, if any, of . . . changes to

the dead load capacity" of the Facility. *Id.* ¶ 29. And, Kalkreuth states that "it is not clear whether [it] has received all of the documents requested from all of the Third-Party Defendants." *Id.* ¶ 35. Accordingly, Kalkreuth "subpoenaed records from approximately 16 non-parties, seeking documents related to renovations made to the [Facility] at any time." *Id.* ¶ 30.

Additionally, Kalkreuth argues that between 1996 and 2011, it lacked "privity" and/or "contemporaneous interaction" with any of the Third-Party Defendants. *Id.* ¶ 23. Accordingly, Kalkreuth contends that it lacked documents and information necessary for it to determine, pursuant to C.J. § 3-2C-02(a)(2), whether any the Third-Party Defendant breached its standard of care. *Id.* In particular, Kalkreuth argues that it "was not in possession of any documents related to the services rendered to the [Facility] by Third-Party Defendants . . . such as emails, load calculations (if any), . . . which are reasonably necessary to support (and/or refute) Kalkreuth's Third-Party Claims." *Id.* ¶ 24. Kalkreuth states, *id.* ¶ 42: "[I]t is the need to learn about a Building to which Kalkreuth has had limited connection that drives" the Expert Motion.

Architecture states that it is "amenable to a later [certificate] due date" (ECF 75 at 7), but opposes Kalkreuth's alternative request for the Court to waive the Certificate Requirement altogether. *Id.* And, Architecture disputes "good cause" on the ground that it had already "produced its entire project files for design services its [sic] performed in 2005 and 2009[.]" *Id.*

A&S opposes both modification and waiver of the Certificate Requirement. *See* ECF 76. It argues, *inter alia*, that "good cause has not been shown for the requested relief" because it already completed a "broad production of [its] project files related to services provided to SRI over a number of years." *Id.* at 3, 5.

Rathgeber/Goss also opposes both modification and waiver of the Certificate Requirement. *See* ECF 77. In its view, Kalkreuth lacks "good cause" to modify or waive the

Certificate Requirement because Kalkreuth already possessed sufficient information "to prepare and file" a certificate as to Rathgeber/Goss. *Id.* at 6.

In its Reply (ECF 84), Kalkreuth maintains that it has shown "good cause" for granting the Expert Motion. *Id.* ¶ 12. It asserts that "although documents were produced" by the Third-Party Defendants, Kalkreuth remains concerned "as to whether that production [was] complete." *Id.* ¶ 3. Further, Kalkreuth maintains that it "retained experts who are working to evaluate the documents produced to date (both by the parties and by various [non-parties] in response to Subpoenas issued by Kalkreuth in September, several of which remain outstanding) in order to provide the respective certificates." *Id.* ¶ 8. Additionally, Kalkreuth argues that its "experts believe that adequate certifications should not be made without having the opportunity to consider all of the relevant documents or considering the roles and communications among the parties." *Id.* ¶ 9.

In my view, Kalkreuth's attempt to acquire additional information through non-party subpoenas, coupled with its request to allow its experts time to review the relevant documents, reflects a "degree of diligence that an ordinarily prudent person would have exercised" in similar circumstances. *Heron,* 361 Md. at 271, 761 A.2d at 63. Accordingly, I am satisfied that Kalkreuth acted in a "reasonably prudent" manner, and has demonstrated good cause in seeking an extension of time to file the certificates. *See Kearney*, 416 Md. at 658, 7 A.3d at 610.

But, there is absolutely no basis to waive the Certificate Requirement. Indeed, as noted, while the Expert Motion was pending, Kalkreuth filed certificates as to Architecture, A&S, and Rathgeber/Goss. *See* ECF 101 (Certificate of Stephen Burdette, A.I.A., N.C.A.R.B., L.E.E.D. A.P.); ECF 102 (Certificate of Marco Legaluppi, P.E.); ECF 104 (Amended Certificate of

Michael Purtell, P.E.).    No third-party defendant has challenged the sufficiency of these certificates, pursuant to C.J. §§ 3-2C-02(a)(1) or (a)(2).  *See* Docket.

Because the Amended Third-Party Complaint presents no new claim against Architecture, A&S, or Rathgeber/Goss, the certificates satisfy the Certificate Requirement as to those Third-Party Defendants, in regard to the Amended Third-Party Complaint.   However, Kalkreuth has not filed a certificate as to A&S Engineering, which will be added as a Third-Party Defendant.   Accordingly, Kalkreuth shall file a certificate as to A&S Engineering "within 90" days of the docketing of the attached Order.  *See* C.J. § 3-2C-01(a)(2).

For the forgoing reasons, I shall deny, as moot, the Expert Motion (ECF 74) as to the request to waive the Certificate Requirement as to Architecture, A&S, and Rathgeber/Goss.  But, I shall grant the Expert Motion as to the request to modify the Certificate Requirement as to Architecture, A&S, or Rathgeber/Goss, pursuant to C.J. § 3-2C-02(c)(1).

### III.    Conclusion

For the reasons sated above, I shall grant the Motion to Amend (ECF 86).   Additionally, I shall grant the Expert Motion (ECF 74) in part and deny it in part.   In particular, I shall deny, as moot, the Expert Motion as to the request to waive the Certificate Requirement as to Architecture, A&S, and Rathgeber/Goss.  But, I shall grant the Expert Motion as to the request to modify the time for filing the Certificate Requirement as to Architecture, A&S, and Rathgeber/Goss.

An Order follows.


Date:  August 10, 2018                                            _____/s/_____
                                                                                          Ellen Lipton Hollander
                                                                                          United States District Judge

-21-